J-S83016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.C., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2573 EDA 2017 |

Appeal from the Order Entered July 11, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-0001736-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.M.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: R.C., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2574 EDA 2017 |

Appeal from the Order Entered July 11, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0001042-2016

BEFORE:  GANTMAN, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 26, 2018**

R.C. ("Father") appeals from the decree and order entered July 11, 2017, granting the petition filed by the Philadelphia Department of Human Services ("DHS" or the "Agency"), to involuntarily terminate his parental

rights to Z.C.[1] ("Child") pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511, and change Child's permanency goal to adoption pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351.[2] We affirm.

On November 2, 2016, DHS filed the petitions for the involuntary termination of Mother's and Father's parental rights to Child, and for the change of Child's permanency goal to adoption. On May 22, 2017, the trial court held an evidentiary hearing on the termination/goal change petitions. Father's counsel was present, but Father was not. Counsel for the parties agreed to the admission of stipulated facts, but not to their veracity. N.T., 5/22/17, at 9. DHS presented the testimony of Toshia O'Brien, case manager responsible for Child, from the Community Umbrella Agency ("CUA"), Northeast Treatment Center ("NET"). N.T., 5/22/17, at 2, 10. DHS also presented the testimony of Natasha Bently, the CUA/NET aide for Child, and Dorothy Ford-Green, the former CUA/NET case manager for Child. **Id.** at 2, 18, 23.[3] **Id.** The trial court continued the hearing until July 11, 2017,

_____

[1] Child is a male born in May of 2014.

[2] In separate decrees dated and entered July 11, 2017, the trial court voluntarily terminated the parental rights of J.A. ("Mother") and involuntarily terminated the parental rights of any unknown father of Child. Neither Mother nor any unknown father has filed an appeal from the termination decrees and goal change orders, nor is Mother or any unknown father a party to the appeals presently before this Court.

[3] Attorney Lisa Visco, the court-appointed guardian *ad litem* ("GAL") representing Child, was present at the termination/goal change hearings on
*(Footnote Continued Next Page)*

to allow Father and Mother to sign voluntary relinquishments of their parental rights in the interim. At the separate hearing on July 11, 2017, Mother testified on her own behalf and voluntarily relinquished her parental rights to Child. N.T., 7/11/17, at 4. Father neither voluntarily relinquished his rights nor appeared at the hearing. The trial court questioned Ms. O'Brien, as did the GAL. *Id.* at 6-8.

At the hearing, the following factual and procedural history was set forth, as recited by the trial court:

> The family in this case became involved with DHS in 2015, when DHS received a General Protective Services ("GPS") report on June 10, 2015 that alleged Child was diagnosed with a hyperthyroid disorder and a seizure disorder; Child failed to receive medications as prescribed;[2] Father has a history of Phencyclidine ("PCP") use; and Father is unemployed. Child has been hospitalized at St. Christopher's Hospital for seizures on May 1, 2015 and May 20, 2015. Child attended an appointment with St. Christopher's Hospital endocrinology department on May 29, 2015. Child's bloodwork indicated that Child failed to receive medication as prescribed. DHS investigated [the] family's home on May 29, 2015. Father, Mother,[3] and Maternal Aunt were present in the family home during the visit. DHS noticed that Father appeared to be under the influence from an unknown substance and smelled of alcohol. The GPS report was substantiated. Community Umbrella Agency ("CUA") services were placed into the family's home through NorthEast Treatment Center ("NET") on June 15, 2015. DHS received another GPS report on June 25, 2015, that alleged Father was witnessed under the influence of an unknown substance and became violent at the scene. Father attempted to leave the family home with Child while CUA attempted to asses[s] Child's safety. CUA contacted the police[,] and Child was transported to DHS. After

_(Footnote Continued)_ _____

May 22, 2017 and July 11, 2017. She actively questioned the witnesses at those hearings and has filed an appellate brief on behalf of Child.

- 3 -

Child arrived at DHS, it was noted that Child was dirty with a rash on his face and was improperly clothed.[4]  This GPS report was also substantiated.  DHS obtained an Order of Protective Custody ("OPC") and Child was placed in a medical foster home through NET on June 25, 2015.  Child currently remains in the same foster home.  A shelter care hearing was held for Child on June 26, 2015, but Father failed to attend.  The OPC was lifted and the Child's temporary commitment to DHS was ordered to stand.  Father was referred to the Clinical Evaluation Unit ("CEU") for a drug screen and assessment, and Father was to have supervised visits with the Child prior to the adjudicatory hearing.

On July 6, 2015, Child was adjudicated and was fully committed to DHS.  Father was offered twice[-]weekly supervised visits at the agency and was referred to CEU for a forthwith drug screen, dual diagnosis assessment, and three random drug screens.  Additionally, Father was referred to the Achieving Reunification Center ("ARC") for anger management, domestic violence, parenting, housing, and employment classes.  Father failed to attend the Single Case Plan ("SCP") objectives meeting held on July 9, 2015.  Father tested positive for PCP and cannabinoids at the CEU on October 6, 2015.  Father failed to attend the permanency review hearing held for Child on October 28, 2015.  Father's SCP objectives remained the same.  Father was ordered to engage in his objectives.  Father was found to have shown no compliance with the permanency plan.  Father was offered weekly[-]supervised visits at the agency and referred to CEU for a drug and alcohol screen, dual diagnosis assessment, and three random drug screens.  The CEU issued a progress report for Father on January 8, 2016.  The progress report noted that Father tested positive for PCP and marijuana on October 28, 2015; Father failed to attend a schedule assessment with CEU on November 5, 2015; and CEU had no further contact with Father.  Father attended the permanency review hearing on January 11, 2016.  Father was offered continued weekly visits at the agency and the trial court ordered Father to be re-referred to CEU for a drug screen, dual diagnosis assessment, and three random drug screens.  Additionally, Father was ordered to be re-referred to ARC and engage in completing all of his objectives.  A SCP meeting was held on January 14, 2016.  Father's parental objectives remained the same as noted by the trial court.  The CEU issued a progress report for Father on April 11, 2016.  The report noted that Father failed to attend his scheduled

assessment with CEU on February 8, 2016[,] and that CEU had no further contact with Father. Father attended a permanency review hearing for Child on April 12, 2016. Father's SCP objectives remained the same. The [trial court] noted that Father was found to have shown no compliance with the permanency plan. CEU issued a progress report for Father on July 8, 2016. This report noted that Father tested positive for marijuana on April 12, 2016, at CEU; [that] Father failed to attend his scheduled assessment at CEU on May 4, 2016; and that CEU had no further contact with Father. Father attended a permanency review hearing for Child on July 11, 2016. The [trial court] noted that Father was moderately compliant with the permanency plan. Father had engaged in a drug and alcohol program. Father was also participating in his supervised visits, only missing three visits. However, Father was not engaging in his ARC programs[,] and he was ordered to re-engage. At the permanency hearing on November 18, 2016, in front of a Master, the trial court granted a continuance[,] and ordered Father to CEU for drug and alcohol screen when he avails himself and three random drug screens.

Child has been in DHS custody since June 25, 2015. Father has failed to comply with his SCP objectives and has been inconsistent with his visits with Child. When Father does attend visitation, he often arrives past the late grace period. Father failed to graduate past weekly[-]supervised visitation with Child. Father's completion of his dual diagnosis drug and alcohol program was still outstanding. Father did not complete the ARC programs, mainly anger management, domestic violence, housing, employment, and parenting. Father has failed to successfully complete all his SCP objectives. DHS filed a petition to involuntarily terminate Father's parental rights and change Child's permanency goal to adoption on November 2, 2016.

On May 22, 2017, the trial court held the termination and goal change trial. Father was personally served on March 22, 2017, but he failed to appear in court. The trial court heard the testimony and held its decision in abeyance to allow Father the opportunity to sign voluntary relinquishment of his parental rights. The case was given another date of July 11, 2017, for further testimony. On July 11, 2017, [F]ather failed to appear and he did not sign voluntary relinquishment of parental rights. (N.T. 7/11/17, pg. 9). The court found clear and convincing evidence to change the permanency goal to adoption and to

involuntarily terminate Father's parental rights under 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b). On August 8, 2017, Father's attorney filed this appeal on behalf of Father.

_____

[1] [ ]

[2] Child suffers from a hyperthyroid disorder, a seizure disorder, and asthma. Child was prescribed levothyroxine and albuterol for the diagnosed disorders.

[3] Mother voluntarily relinquished her parental rights on May 12, 2017, upon which the trial court accepted on July 11, 2017.

[4] Child was 13 months old at the time of the removal and was wearing clothing sized for a three[-]month[-]old.

Trial Court Opinion, 9/28/17, at 1-4 (footnotes in original).

In a decree and order entered on July 11, 2017, the trial court involuntarily terminated Father's parental rights to Child, and changed Child's permanency goal to adoption. On August 8, 2017, Father timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b) with regard to the termination decrees and goal change orders. On August 29, 2017, this Court, acting *sua sponte*, consolidated Father's appeals.

In his brief on appeal, Father raises the following issues:

1. Did the [t]rial [c]ourt commit reversible error, when it involuntarily terminated Father's parental rights where such determination was not supported by clear and convincing evidence under the [A]doption [A]ct, 23 PA.C.S.A. §2511(a)(1), (2), (5) and (8)?

2. Did the [t]rial [c]ourt commit reversible error, when it involuntarily terminated Father's parental rights without giving primary consideration to the effect that the termination would

- 6 -

have . . . on the developmental, physical and emotional needs of [C]hild as required by the [A]doption [A]ct, 23 PA.C.S.A.§2511(b)?

3. Did the [t]rial [c]ourt commit reversible error, when it terminated Father's parental rights and changed [C]hild's goal to adoption as substantial, sufficient, and credible evidence was presented at the time of trial which would have substantiated denying the [p]etition for [g]oal [c]hange?

4. Did the [t]rial [c]ourt commit reversible error when it involuntarily terminated Father's parental rights and changed [C]hild's goal to adoption where Father was not consistently offered sufficient services to enable him to reunite with [C]hild?

Father's Brief, at 4.[4]

With regard to Section 2511(a)(1), Father challenges the sufficiency of the evidence to support termination, claiming that the evidence at the hearing clearly demonstrated that he was working towards satisfying his SCP objectives, and did not act with a settled purpose of relinquishing his parental rights or refuse to perform his parental duties. Father's Brief, at 6, 15. Father alleges that he was attending parenting and employment classes, and had engaged in drug and alcohol treatment during the life of the case. *Id.* at 11. Father states that he consistently visited with Child

_____

[4] Father challenges the termination of his parental rights under § 2511(a)(1), (2), (5) and (8). This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will confine our review to Father's arguments regarding Section 2511(a)(1) and (2), noting that, in its opinion, the trial court addressed these subsections together. Moreover, for ease of discussion, we will address Father's issues in a different order than presented.

until October of 2016. *Id.* Father asserts that, during the visits, he required only minimal re-direction. *Id.* With regard to Section 2511(a)(2), Father challenges the sufficiency of the evidence to support termination, based on the same argument as he makes in relation to Section 2511(a)(1). Father's Brief, at 12-13.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> [...T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We [have] observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (internal citations and quotations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

Section 2511 provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a).

With respect to Subsection 2511(a)(1), our Supreme Court has held as follows:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1988).

Further, this Court has stated:

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

Whereas, to satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under Section 2511(a)(2), due to parental

incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

In its opinion, the trial court stated as follows:

[F]or the purpose of this opinion, Father's issues 1 through 4 will be consolidated to read: Did the trial court err or abuse its discretion when it terminated Father's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b), and changed the permanency goal to adoption? Father has appealed the involuntary termination of his parental rights. It should be noted that Father's attorney stipulated to the facts, but not the veracity, on both the goal change and termination petitions. (N.T. 5/22/2017, pg. 9).

* * *

The petition for involuntary termination was filed on August 8, 2017. Father's SCP objectives were to maintain visits with Child, provide a home address, complete a dual diagnosis drug and alcohol assessment, complete random drug screens and attend ARC for anger management, domestic violence, parenting, housing, and employment. (N.T. 5/22/17, pgs. 11, 17, 24-25). During the six-month period prior to the filing of the petition, Father has failed to attend any scheduled supervised visitation with Child. (N.T. 5/22/17, pg. 19, 28). Since Father's SCP objectives were put into place in July 2015, Father has consistently given positive drug screens for PCP and/or marijuana on all but one drug screen. (N.T. 5/22/17, pgs. 16-17). Father never successfully completed a drug and alcohol program. (N.T. 5/22/17, pgs. 24-25). Father has failed to consistently engage in anger management, parenting, housing, and domestic violence classes at ARC. (N.T. 5/22/17, pgs. 24-25). Father was aware of his SCP objectives. (N.T. 5/22/17, pgs. 12-13, 23-24). For the entire six-month period prior to the filing of the petition, Father either failed or refused to complete his objectives and place himself in a position to parent. Furthermore, throughout the whole history of the case, Father

violated the court orders to engage [in] and complete his SCP objectives. As a result, the trial court did not err or abuse its discretion by finding clear and convincing evidence that Father, by his conduct, had refused and failed to perform parental duties and has evidenced a settled purpose to relinquish his parental claim to Child, so termination under this section was proper.

The trial court also terminated Father's parental rights under 23 Pa.C.S.A. §2511(a)(2). . . .

Child has been in care since June 2015. Father's SCP objectives were to maintain visits with Child, provide a home address, complete a dual diagnosis drug and alcohol assessment, complete random drug screens, and attend ARC for anger management, domestic violence, parenting, housing, and employment. (N.T. 5/22/17, pgs. 11, 17, 24-25). Father's objectives have been the same for the life of the case and Father was aware of the objectives. (N.T. 5/22/17, pgs. 23-24). Father has failed to attend scheduled supervised visits with Child since October 2016. (N.T. 5/22/17, pgs. 19, 28). Father's drug screens have been consistently positive for the life of the case with the exception of one negative drug screen. (N.T. 5/22/17, pgs. 16-17). Father has not successfully completed a dual diagnosis drug and alcohol program. (N.T. 5/22/17, pgs. 15, 24-25). Father failed to successfully complete all of the required parenting classes at ARC. (N.T. 5/22/17, pg. 17). Father refused to engage in domestic violence counseling. (N.T. 5/22/17, pg. 26). Father was inconsistent with the anger management program. (N.T. 5/22/17, pg. 25). Father has failed to attend a job program or gain employment (N.T. 5/22/17, pg. 27). On May 22, 2017, the CUA Case Manager rated Father's compliance with his SCP goals as not compliant. (N.T. 5/22/17, pg. 13). Child needs permanency, which Father cannot provide. Father has demonstrated that he is unwilling to remedy the causes of his incapacity to parent in order to provide Child with essential parental care, control, or subsistence necessary for his physical and mental well-being. (N.T. 5/22/17, pg. 17). Termination under this section was also proper.

. . . A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 509 (Pa. Super. 2001). As a consequence, Pennsylvania's Superior Court has recognized that a child's needs and welfare require agencies to work toward

termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, which have been ineffective. This process should be completed within eighteen months. *In re N.W.*, 851 A.2d 508 (Pa. Super. 2004).

Child has been in DHS custody since June 2015. Child was placed because Father was unable to parent. Father's SCP objectives were to maintain visits with Child, provide a home address, complete a dual diagnosis drug and alcohol assessment, complete random drug screens, and attend ARC for anger management, domestic violence, parenting, housing, and employment. (N.T. 5/22/17, pgs. 11, 17, 24-25). Father's objectives have been the same for the life of the case and Father was aware of the objectives. (N.T, 5/22/17, pg. 23-24). Father has failed to attend scheduled supervised visits with Child since October 2016. (N.T. 5/22/17, pg. 19, 28). Father's drug screens have been consistently positive for the life of the case with the exception of one negative drug screen. (N.T. 5/22/17, pgs. 16-17). Father has not successfully completed a dual diagnosis drug and alcohol program. (N.T. 5/22/17, pgs. 15, 24-25). Father failed to successfully complete all of the required parenting classes at ARC. (N.T. 5/22/17, pg. 17). Father refused to engage in domestic violence counseling. (N.T, 5/22/17, pg. 26). Father was inconsistent with the anger management program. (N.T. 5/22/17, pg. 25). On May 22, 2017, the CUA Case Manager rated Father's compliance with his SCP goals as not compliant. (N.T. 5/22/17, pg. 13). As the record reflects, the trial court has found reasonable efforts on behalf of DHS at all review and permanency hearings. Child is currently placed in a loving foster home and has been in this foster home since June 2015. (N.T. 5/22/17, pg. 13-14). Child's foster home is a medical foster placement. Since Child's placement in the foster home, Child's asthma, hyperthyroid disorder, and seizure disorder are under control. Child has not had any seizures since he was one-year-old. Child is in a stable environment with no risk of any harm or danger. (N.T. 5/22/17, pg. 14-15). It is in the Child's best interest to be adopted and this foster parent is a pre-adoptive resource. (N.T. 5/22/17, pgs. 14-15). As a result, the trial court found that termination of Father's parental rights was in the best interest of Child for his physical, intellectual, moral and spiritual well-being. Father is unable to remedy the conditions that led to Child's placement.

(N.T. 5/22/17, pg. 17). Because the trial court made these determinations on the basis of clear and convincing evidence, termination under this section was also proper.

Trial Court Opinion, 9/28/17, at 4-7.

Regarding Section 2511(a)(1), the trial court found that Child had been in care for more than six months, and it rejected Father's explanation for his conduct. The trial court also found a lack of post-abandonment contact between Father and Child, as Father had failed to attend the supervised visits since October of 2016. Accordingly, after a careful review of the record, we agree with the trial court's conclusion that Father has failed to perform parental duties with regard to Child. Its termination of his parental rights under Section 2511(a)(1) is supported by competent, clear and convincing evidence in the record. *In re Adoption of S.P.*, 616 Pa. at 325-326, 47 A.3d at 826-827. Thus, we find no abuse of discretion in the termination of Father's parental rights pursuant to Section 2511(a)(1).

We, likewise find that the trial court's conclusions regarding Section 2511(a)(2) are supported by competent, clear and convincing evidence, *i.e.*, Father has demonstrated a repeated and continued incapacity, abuse, neglect or refusal that has caused Child to be without essential parental care, control or subsistence necessary for his physical or mental well-being, and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by Father. *Id.* Thus, we find no abuse of

discretion in the termination of Father's parental rights pursuant to Section 2511(a)(2).

Next, we consider Father's fourth issue. Father argues, in relation to Section 2511(a) that, prior to filing the termination petition, DHS did not make reasonable efforts to reunify Child with him. *See* Father's Brief, at 4, 6, 11, and 12-13. Citing *In re Adoption of R.J.S.*, 901 A.2d 502, 507 (Pa. Super. 2006), and *In re S.H.*, 71 A.3d 973, 980 (Pa. Super. 2013), Father argues that DHS is required to make reasonable efforts to reunify a parent with his child. Father's Brief, at 11. Father also contends that, after Mother agreed to voluntarily relinquish her parental rights, DHS and NET failed to offer him any further reunification services, thus violating his guarantee to due process under the United States Constitution. *Id.*

When reviewing a termination decree on appeal, we do not consider whether DHS made reasonable efforts. Our Supreme Court has rejected the argument that the provision of reasonable efforts by the county children's services agency is a factor in termination of the parental rights of a parent to a child. *See In the Interest of: D.C.D., a Minor*, 105 A.3d 662, 673-674, 676 (Pa. 2014) (rejecting the suggestion that an agency must provide reasonable efforts to enable a parent to reunify with a child prior to the termination of parental rights, and rejecting the suggestion that Section 2511 of the Adoption Act should be read in conjunction with Section 6351 of the Juvenile Act, particularly Section 6351(f)(9)(iii)). Thus, based on our

Supreme Court's holding in *In the Interest of: D.C.D., a Minor*, we find no merit to Father's argument.

Next, we address Father's issue that the trial court abused its discretion in terminating his parental rights to Child pursuant to Section 2511(b). Father claims that Child was excited to see him and would hug him at the visits he attended. Father's Brief, at 7, 14, 16-18. Father asserts that, given time and additional reunification services, the existing safety issues could be resolved. *Id.* at 18.

Section 2511(b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

This Court has stated that the focus in terminating parental rights under Section 2511(a) is on the parent, but it is on the child pursuant to Section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental,

physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], [our Supreme] Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between

[the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests). "[A] parent's basic constitutional right to the custody and rearing of . . . [his] child is converted, upon the failure to fulfill . . . [his] parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

Here, with regard to Section 2511(b), the trial court stated the following:

Father has failed to attend scheduled supervised visits with Child since October 2016. At the end of the visits when Father attended, Child would not have any difficulty transitioning from Father to the foster parent. (N.T. 5/22/17, pg. 19, 28). Father would consistently call the CUA Aid to confirm the visit with Child twenty-four hours prior to the scheduled visit but would fail to appear at the scheduled visit. (N.T. 5/22/17, pg. 21). Child is currently placed in a loving foster home and has been in this foster home since June 2015. The CUA Case Manager who visited Child in the foster home once per month noted that Child and Foster Parent have a very close bond. The foster home provides Child with a stable environment with no risk of harm or danger. Child's special medical needs have been addressed and

- 18 -

are under control in the foster home. Child would not suffer any irreparable harm if Father's rights were terminated[,] and it is in the Child's best interest to be adopted by the current foster parent. (N.T. 5/22/17, pgs. 13-15). Foster Parent is very responsive in taking care of Child. (N.T. 5/22/17, pg. 26). The record establishes by clear and convincing evidence that termination would not sever an existing and beneficial relationship. Father has failed to create any parental bond with Child by not attending visits. The trial court's termination under §2511(b) was proper and there was no abuse of discretion.

* * *

For the aforementioned reasons, the court found that DHS met its statutory burden by clear and convincing evidence regarding termination of Father's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2) and (b) since it would best serve Child's emotional needs and welfare. The trial court's termination of Father's parental rights . . . was proper and should be affirmed.

Trial Court Opinion, 9/28/17, at 9-10, 11-13.

Upon review, we conclude the trial court appropriately considered the safety of Child as weightier than any affection the young child might feel for Father. Further, this Court has held that a parent's love of his child, alone, does not preclude a termination. **See In re L.M.**, 923 A.2d 505, 512 (Pa. Super. 2007) (stating that a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." **In re Adoption of C.L.G.**, 956 A.2d at 1007 (citing **In re Z.S.W.**, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")). After a careful review of the record, we find that there is competent evidence in the record that

- 19 -

supports the trial court's findings and credibility determinations. We, therefore, find no abuse of the trial court's discretion in terminating Father's parental rights to Child under Section 2511(b). *In re: T.S.M.*, 71 A.3d at 267.

Finally, we consider Father's issue that the trial court abused its discretion in changing the permanency goal for Child to adoption. The Pennsylvania Supreme Court set forth our standard of review as follows:

> "The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *In re R.J.T.*, 608 Pa. 9, [27], 9 A.3d 1179, 1190 (Pa. 2010). We review for abuse of discretion[.]

*In Interest of: L.Z.*, *A Minor Child*, 631 Pa. 343, 360, 111 A.3d 1164, 1174 (2015).

When considering a petition for goal change for a dependent child, the trial court considers:

> the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007) (citing 42 Pa.C.S.A. § 6351(f)).

- 20 -

Regarding the disposition of a dependent child, Section 6351(e), (f), (f.1), and (g) of the Juvenile Act provides the trial court with the criteria for its permanency plan for the subject child. Pursuant to those subsections of the Juvenile Act, the trial court is to determine the disposition that is best suited to the safety, protection and physical, mental and moral welfare of the child. 42 Pa.C.S.A. § 6351(e)-(g).

With regard to the goal change, the trial court stated as follows:

Father also alleges that the court erred in changing [Child's] permanency goal from reunification to adoption.

* * *

Father's drug screens have been consistently positive for the life of the case with the exception of one negative drug screen. (N.T. 5/22/17, pgs. 16-17). Father has not successfully completed a dual diagnosis drug and alcohol program. (N.T. 5/22/17, pgs. 24-25). Father failed to successfully complete all of the required parenting classes at ARC. (N.T. 5/22/17, pg. 17). Father has failed to complete employment and housing programs at ARC. Father has made no efforts to find stable housing and a job. (N.T. 5/22/17, pgs. 12-13, 24-25, 27). Father refused to engage in domestic violence counseling. (N.T. 5/22/17, pg. 26). Father was inconsistent with the anger management program. (N.T. 5/22/17, pg. 25). Father has failed to attend scheduled supervised visits with Child since October 2016. (N.T. 5/22/17, pg. 19, 28). . . .

[C]hild needs permanency, which Father cannot provide at this time. The DHS witnesses were credible. The record established by clear and convincing evidence that the credible testimony of DHS's witness, the court's change of permanency goal from reunification to adoption was proper. The trial court did not err or abuse its discretion when it changed the goal to adoption.

* * *

Changing Child's permanency goal to adoption was in his best interest. The trial court's . . . change of permanency goal to adoption was proper and should be affirmed.

Trial Court Opinion, 9/28/17, at 10-13.

After our careful review of the record, we have determined that the findings of fact and credibility determinations of the trial court are supported by competent evidence in the record. *In Interest of: L.Z.*, *A Minor Child*, 631 Pa. at 360, 111 A.3d at 1174. We, therefore, affirm the trial court's decree terminating Father's parental rights to the Child, and its order changing the Child's permanency goal to adoption.

Decree and order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/26/18